UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* RONALD BIAS | CIVIL ACTION |
| VERSUS | NO. |
| TANGIPAHOA PARISH SCHOOL BOARD, ET AL. | SECTION "L" |

## ORDER & REASONS

Before the Court is Defendants Carl Foster, Michael Stant, and Tangipahoa Parish School Board's motion to dismiss or, alternatively, motion for summary judgment (Rec. Doc. 44). Having considered the applicable law and the parties' briefs, and after having heard oral argument, the Court now issues this order and reasons.

### I.    BACKGROUND

This action arises out of an alleged misappropriation of United States Marine Corps funds and resulting retaliation. On November 1, 2006, Realtor Ronald Bias retired from the Marine Corps as a lieutenant colonel. Following his retirement, he was employed by the Tangipahoa Parish School Board as a senior marine instructor for the Junior Officers' Training Corps ("JROTC") at Amite High School. On June 18, 2009, the United States Marine Corps contacted Mr. Bias to inform him that it had mistakenly allowed him to retire too early—he had served only 18 years, nine months, and 24 days of a required 20 years. As a result of this error, the Marine Corps had paid Mr. Bias $106,000 for which he had been ineligible. Accordingly, he was provided with the option of repaying those benefits or re-enlisting for a period of 15 months so as to become eligible for retirement. Mr. Bias chose the latter.

Ordinarily, JROTC positions are filled by retired officers who are certified by the Marine Corps but employed by the schools themselves, as Mr. Bias had been. Perhaps in recognition of

the difficulty caused by its error, the Marine Corps varied from its usual policy and assigned Mr. Bias to the JROTC at Amite High School, where he was to continue as a senior marine instructor. Unlike the usual JROTC officer, he would be employed by the Marine Corps. He received his orders on July 10, 2009, and began work shortly thereafter. According to Mr. Bias, he was informed that he would remain at the Amite High School assignment for 15 months, at which point he could either re-enlist or retire.

As the senior marine instructor, Mr. Bias supervised Mr. Foster, a marine instructor and retired master sergeant in the Marine Corps, and reported to Mr. Stant, principal of Amite High School. Both Mr. Foster and Mr. Stant were employees of the Tangipahoa Parish School Board. Soon after he was assigned to Amite High School, Mr. Bias became aware that Mr. Foster planned to request that the Marine Corps reimburse him for non-JROTC activities, including an out-of-state trip by the school's cross-country team. Mr. Bias then notified both Mr. Stant and the Marine Corps of Mr. Foster's intentions. However, with Mr. Stant's approval, Mr. Foster persisted and made the request, which was denied. As a result, Mr. Foster was decertified as a senior instructor with the JROTC. Mr. Bias alleges that, because he had reported the misconduct, Mr. Stant contacted Mr. Bias' Marine Corps supervisor and asked the supervisor to transfer Mr. Bias.

On April 12, 2010, Mr. Bias was informed that he would be transferred if he did not retire. Mr. Bias asserts that this transfer constituted retaliation. (In addition to bringing this action, Mr. Bias also reported Mr. Stant's conduct to the Inspector General of the Marine Corps on October 26, 2010, who determined that the transfer was not reprisal because Mr. Bias had previously been informed that he would be transferred from Amite High School after the 15

2

months he needed to obtain retired status had elapsed.) Mr. Bias retired on October 31, 2010, and was reemployed as the senior marine instructor at Amite High School on November 3, 2010.

Mr. Bias brought this action on September 5, 2014, against the Tangipahoa Parish School Board as well as Mr. Stant and Mr. Foster, in their official capacities. (Rec. Doc. 1). In his complaint, he asserts (1) an False Claims Act ("FCA") *qui tam* claim for the false billing of goods and services not rendered, (2) an FCA *qui tam* claim for conspiracy to submit false claims, and (3) an FCA retaliation claim. On January 7, 2013, the United States of America filed a notice of its election to decline intervention. (Rec. Doc. 2). On January 15, 2013, the complaint was unsealed and served. (Rec. Doc. 3). On February 15, 2013, Mr. Bias moved for leave to file an amended complaint (Rec. Doc. 16), which the Court granted on March 6, 2013 (Rec. Doc. 25). In the amended complaint, Mr. Bias brought additional claims, this time including Mr. Stant and Mr. Foster in both their official and individual capacities. (Rec. Doc. 26). The new complaint includes (4) a § 1983 claim for violations of the First Amendment to the United States Constitution, (5) a state law claim for violations of Article I, Section 7 of the Louisiana Constitution, and (6) a § 1983 claim for violations of the Due Process Clause of the United States Constitution.

## II.   PRESENT MOTIONS

The Tangipahoa Parish School Board, Mr. Stant, and Mr. Foster now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56. (Rec. Doc. 44). First, they assert that Mr. Bias' FCA *qui tam* claims must be dismissed for lack of subject matter jurisdiction because, as a former or present member of the armed forces, he may not recover against a member of the armed forces for an injury arising out of his service in the armed forces. Second, they assert that Mr. Bias' FCA retaliation claims are prescribed. Third, they assert that Mr. Bias' 42 U.S.C. § 1983 claims and state law claims are

prescribed, as well. Fourth, they argue that Mr. Bias' claims lack critical allegations of fact. Fifth, they argue that the claims made against employees of a public entity are claims against the entity itself, and therefore are duplicative.

Mr. Bias responds to each of the these arguments. First, he asserts that subject matter jurisdiction exists over his *qui tam* claims because, although he was a member of the armed services, the claims are only barred if made against a member of the armed services and, in this instance, they are not. Second, he argues that his FCA retaliation claims are not prescribed, in part because the Dodd-Frank Act extended the statute of limitations. Third, he argues that the Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant failed to plead the affirmative defense of statute of limitations in their answer, precluding the prescription of his § 1983 claims and state law claims. Fourth, he argues that his claims were sufficiently based in fact. Last, Mr. Bias agrees that his claims against the individual employees were made against those employees in their official capacities.

The Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant reply that the transfer could not have been retaliatory because he had already been informed that he would be transferred. Further, they argue that the FCA bars any claim by any current member of the armed forces against any former member of the armed forces. Last, they assert that Mr. Bias' contention that Mr. Foster acted criminally is unfounded and thus does not infer fraud.

Following oral argument on February 12, 2014, each of the parties' submitted additional memoranda. (Rec. Docs. 58, 61).

### III. LAW & ANALYSIS

#### A. Standard

Although the parties have attached considerable material to their memoranda, there are significant disputes with regard to material facts that preclude summary judgment. Accordingly,

4

the Court will apply the requirements of Rule 12(b)(6) alone. In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Each of the claims will be considered in turn.

    **B.**    **FCA *Qui Tam* Claims**

        **1.**    **Jurisdiction**

The Tangipahoa Parish School Board, Mr. Stant, and Mr. Foster argue that Mr. Bias' FCA *qui tam* claims are barred because both he and Mr. Foster are members of the armed forces. Generally, 31 U.S.C. § 3730(b) allows a person to bring a civil action—on behalf of themselves and the United States—against another person under 31 U.S.C. § 3729. However, this *qui tam* provision is circumscribed to the extent that it excludes "an action brought by a former or present member of the armed forces . . . against a member of the armed forces arising out of such person's service in the armed forces." 31 U.S.C. § 3730(b)(1).

Here, the question is whether Mr. Bias' and Mr. Foster's respective statuses and the underlying circumstances prohibit the *qui tam* claim. With regard to Mr. Bias' status, there is no dispute that he was, at all relevant points, either a former or present member of the armed forces. *Id.* However, the parties do dispute whether Mr. Foster is a "member of the armed forces." *Id.*

As an initial matter, it is necessary to establish whether the term "member of the armed forces" describes only present members of the armed forces or if it includes former members, as

well. Apart from the provision at issue here, there is only one other instance where a statute describes present members of the armed forces: the Internal Revenue Code lists "[any] post or organization of past or present members of the Armed Forces of the United States" as a category of tax-exempt organizations. 26 I.R.C. § 501. In contrast, the statutes are replete with the term "former members," nearly always in the construction "members and former members" or "members or former members" of the armed forces. *See* 5 U.S.C. § 2108 (pertaining to government organization); 10 U.S.C. § 1034, § 1057, § 1086b, § 1143a, § 1463, § 1152, **§ 1154,** § 1552, § 1554a, § 1563, § 1059, § 2564, § 4683 (pertaining to the armed forces); 18 U.S.C. § 1388 (pertaining to crimes); 38 U.S.C. § 5301,§ 8111 (pertaining to veterans' benefits); 42 U.S.C. § 12619, § 12622 (pertaining to public health and welfare); 49 U.S.C. § 44935 (pertaining to transportation). By separating "members" from "former members," the statutes suggest that any reference to "members" of the armed forces necessarily excludes "former members."

The term "members," as it is used in the FCA, is not defined via a definitional provision specific to the FCA, even though there are other statutes that do this.[1] However, the closest thing to a general definitional provision—a list of those persons subject to the Uniform Code of Military Justice—corroborates the conclusion that "members" excludes "former members":

> (1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.
> . . . .
> (3) Members of a reserve component while on inactive-duty training, but in the case of members of the Army National

---

[1] For instance, a section on military unions defines the term "member" as someone "serving on active duty," "serving on full-time National Guard duty," or a reservist "performing inactive-duty training." 10 U.S.C. § 976.

>  Guard of the United States or the Air National Guard of the United States only when in Federal service.
>  (4) Retired members of a regular component of the armed forces who are entitled to pay.
>  . . . .
>  (6) Members of the Fleet Reserve and Fleet Marine Corps Reserve.
>  . . . .

10 U.S.C. § 802.

It appears significant that, in this provision, "[m]embers of a regular component of the armed forces" are listed separately from "[m]embers of a reserve component" or "[m]embers of the Fleet Reserve and Fleet Marine Corps Reserve." *Id.* The term "member" only seems to refer to a current or present member of the armed forces, and not a past or former member of the same.

Thus, the FCA *qui tam* claim is barred only if Mr. Foster is a member (that is, a current member) of the armed forces. Mr. Foster's release or discharge certificate (Rec. Doc. 45-23) indicates that he entered active duty on May 24, 1978, and was separated on October 31, 1999. His reserve obligation terminated on September 1, 2007. After his separation, Mr. Foster then joined the Fleet Marine Corps Reserve ("FMCR"), which "is composed of enlisted personnel who have completed 20, but less than 30 years of active service and are receiving retainer pay." (Rec. Doc. 45-1 at 25). Individuals in the FMCR are transferred to the retired list "[a]fter 30 years of service and upon [the Secretary of the Navy's] approval." *Id.* Based on the dates on his release or discharge certificate, Mr. Foster had been in factive duty for over 21 years and had a reserve duty obligation of nearly eight years, roughly equaling 29 years of active and reserve duty. Accordingly, it appears that Mr. Foster was a member of the FMCR until late 2007 or early 2008, when he was transferred to the retired list. Because Mr. Bias did not begin working at the

Tangipahoa Parish School Board until August 28, 2008, Mr. Foster was in all likelihood on the retired list at all periods relevant to this action.

However, even if Mr. Foster was still a member of the FMCR at the point Mr. Bias began working with him, it is still unlikely he would be considered a member of the armed forces. The provision that establishes the JROTC draws a distinction between those "of an armed force," who are detailed and paid by the Marine Corps and those "who are in receipt of retired pay" or are "members of the . . . [FMCR]," who are hired and paid by the school itself. 10 U.S.C. § 2031(c), -(d). Specifically, it states that the Secretary of the Navy, who oversees the Marine Corps, will either "detail officers and noncommissioned officers of an armed force" or "[i]nstead of, or in addition to, detailing officers and noncommissioned officers on active duty . . . , the [Secretary of the Navy] may authorize qualified institutions to employ, as administrators and instructors in the program, retired officers and noncommissioned officers who are in receipt of retired pay, and members of the [FMCR], whose qualifications are approved by the [Secretary of the Navy] and the institution concerned." *Id.* Thus, Mr. Foster, who was a member of the FMCR or on the retired list, is distinguished from a member of an armed force, both with regard to the person to whom he reported and how he was paid. This is further confirmed by the manner in which the Marine Corps communicated with him. In a January 28, 2010, communication from the M.H. Stroman, the regional director of the Marine Corps JROTC, to Mr. Foster, Mr. Stroman notes that "[a]lthough, [Mr. Foster] is an employee of the school, [his] position as Marine Instructor is subordinate to that of the Senior Marine Instructor and [he] will execute [his] duties as the Marine Instructor under the cognizance and supervision of the Senior Marine Instructor." (Rec. Doc. 45-1 at 95). In a October 26, 2012, communication from T.M. Murray, the commanding general of the Marine Corps JROTC, to Mr. Foster, Mr. Murray rescinded Mr.

8

Foster's "certification as a Marine Instructor . . . previously promulgated by letter dated April 18, 2007." (Rec. Doc. 45-1 at 98). Accordingly, Mr. Foster was not a current member of the armed forces from the period beginning April 18, 2007, onward. Because the events giving rise to this action occurred after that point, the claim has not been made against a member of the armed forces and, therefore, not barred by the FCA.

### 2. Sufficiency

The movants further argue that Mr. Bias' fraud claims are insufficient because they fail to demonstrate that the movants knowingly made false claims. The FCA prohibits "knowingly present[ing], or cause[ing] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). For the purposes of the FCA, "the terms "knowing" and "knowingly" . . . mean that a person, with respect to information . . . (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(a). Further, those terms "require no proof of specific intent to defraud." *Id.* § 3729(b)(1)(b). However, the "*mens rea* requirement is not met by mere negligence or even gross negligence." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008). To eventually prevail, the realtor must demonstrate "that the defendants knowingly or recklessly cheated the government." *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008).

FCA claims are subject to a more rigorous pleading requirement of Rule 9(b), which requires that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b); *see United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" *Grubbs*, 565 F.3d at

9

185. Rule 9(b) generally requires the realtor to plead "the 'time, place, contents, and identity'" of the alleged misrepresentation, but this "is not a straitjacket" and the analysis should be treated as "context specific and flexible" in the context of FCA claims. *Id.* at 190.

Here, the Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant argue that Mr. Bias' FCA fraud claim is deficient because it does not specifically allege that Mr. Foster and Mr. Stant's violations were made knowingly. Mr. Bias alleges that he informed Mr. Foster and Mr. Stant that it would be inappropriate for the Marine Corps funds to be used to pay for a cross-country team trip to Florida. He further alleges that Mr. Foster, with Mr. Stant's approval, sought to seek reimbursement for the trip from a JROTC fund. Subsequently, he alleges that Mr. Foster, with Mr. Stant's approval, sought another reimbursement for expenses unrelated to the JROTC program. Mr. Bias has therefore provided a basis for the assertion that Mr. Foster and Mr. Stant were aware that it was inappropriate to seek reimbursement from the Marine Corps but did so anyway. Accordingly, the FCA fraud claim has been properly pled.

### 3. Frivolity or Vexatiousness

The movants argue that Mr. Bias' claims are frivolous or vexatious. The FCA provides:

> If the [realtor] conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4). In discussing this provision, the Fifth Circuit has noted that "[a] claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension" and that "[a] claim is vexatious when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant." *United States ex rel. Bain v. Ga. Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006). It is not necessary that a claim be both frivolous and vexatious, either supports an award of attorneys' fees. *Id.* However, because Mr. Bias' FCA *qui*

10

*tam* claim has not been dismissed—and because there is not sufficient evidence to support a claim of vexatiousness—the Court declines to issue any such award.

### C. FCA Retaliation Claims

Next, the Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant argue that the statute of limitations bars Mr. Bias' FCA retaliation claims. The record indicates that Mr. Bias was made aware of the alleged retaliation by June 30, 2010,[2] (Rec. Doc. 44-2 at 8-12) and that this action was filed on September 5, 2012 (Rec. Doc. 1). A court must "apply the statute of limitations that is in effect at the time a plaintiff files his complaint." *Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 944 (5th Cir. 2012). "[The] statute of limitations . . . begins to run when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (internal quotation marks omitted). At the time, there was no express statute of limitations for retaliation claims under the FCA. Ordinarily, "when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991). The parties do not dispute that Louisiana law provides a one-year statute of limitations. However, on July 22, 2010, less than a month after the one-year statute of limitations began to run, a three-year statute of limitations for FCA retaliation claims became effective as part of the Dodd-Frank Act. *See Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 944 (5th Cir. 2012). Here, the statute of limitations began to run on June 30, 2010. Because Mr. Bias filed his claim prior to June 30, 2013, it is not barred.

---

[2] The movants suggest that Mr. Bias was aware even earlier because he sent an e-mail message on May 18, 2010, that indicated it was "the PRINCIPAL of the high school who retaliated against [him] by communicating to the assignment monitor a need to have [him] transferred." (Rec. Doc. 44-1 at 10). However, they have misstated the date of that e-mail, which was actually sent on May 18, 2011.  (Rec. Doc. 44-2 at 13)

### D. FCA Retaliation Claims

The movants next argue that Mr. Bias' *qui tam* retaliation claims are insufficiently articulated. "The 'whistleblower' provision of the False Claims Act prevents the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). The FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h). Such a person must establish that they engaged in an activity protected by the FCA, that their employer knew they had engaged in the protected activity, and that they were retaliated against because of it. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371–72 (5th Cir. 2011). "[A]n action that a reasonable employee would find materially adverse, which 'might have dissuaded a reasonable worker from' engaging in a protected activity," constitutes retaliation under the FCA. *Turner v. DynMcDermott Petroleum Operations Co.*, No. 06–1455, 2010 WL 4363403, at p. 2 (E.D. La. Oct. 21, 2010) (Lemmon, J.). As another court has noted, "an alteration in the terms or conditions of employment, whether by demotion, termination or otherwise, may only be carried out by [an] employer." *Howell v. Town of Ball*, No. 12–951, 2012 WL 3962387, at *3 (W.D. La. Sept. 4, 2012).

Here, it is necessary to determine whether Mr. Bias has sufficiently pled his FCA retaliation claim. On August 28, 2008, Mr. Bias was hired by Tangipahoa Parish School Board as a senior marine instructor at Amite High School. After he was notified of the error in his

retirement calculation, he returned to active duty with the Marine Corps and was detailed to the same position beginning August 1, 2009. A month later, on September 11, 2009, he initially reported the inappropriate request of funds for the cross-country team's trip. Thus, during the relevant period, he was employed by the Marine Corps, not the Tangipahoa Parish School Board. In his complaint, however, Mr. Bias lists a number of instances where Mr. Foster and Mr. Stant, to a lesser extent, retaliated against him. It is difficult to see how Mr. Foster or Mr. Stant, both employees of the Tangipahoa Parish School Board, could have retaliated against Mr. Bias, an employee of the Marine Corps. Further, Mr. Bias was Mr. Foster's supervisor. Mr. Bias, therefore, is unable to meet the rudimentary requirement that he was discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment, because the Marine Corps, not the Tangipahoa Parish School Board or its employees, was responsible for the terms and conditions of his employment. Here, the retaliatory act—his transfer—was not that of the Tangipahoa Parish School Board and its employees, but that of the Marine Corps and its employees.[3] Neither the Marine Corps nor its employees are named in this action, nor could they be as a result of the FCA bar discussed above. For this reason, Mr. Bias' FCA retaliation claim must be dismissed.[4]

### E.      State Law Claims & § 1983 Claims

The movants argue that Mr. Bias' other claims are also barred by the relevant statutes of limitation. The United States Court of Appeals for the Fifth Circuit has held that "[w]hen the defendant has waived his affirmative defense by failing to allege it in his answer, or have it

---

[3] Mr. Bias has not cited any relevant precedent in which a FCA retaliation claim was sustained against a non-employer.

[4] Mr. Bias urges that resolution of this issue be deferred until there is further discovery regarding whether he had been "transfer[ed] for reasons that may have been due to retaliation . . . for whistleblowing." (Rec. Doc. 45 at 24). However, even additional discovery will not alter the fact that only the Marine Corps had the authority to transfer him.

included in a pre-trial order of the district court that supersedes the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment." *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976). Rule 8(c) requires that a party "affirmatively state any . . . affirmative defense, including . . . [a] statute of limitations." FED. R. CIV. P. 8(c). Here, Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant have not asserted the applicable statutes of limitation as an affirmative defense. Accordingly, the statutes of limitations may not serve as a bar.

### F.   § 1983 Claims

Next, the Tangipahoa Parish School Board, Mr. Foster, and Mr. Stant argue that the statute of limitations bars Mr. Bias' § 1983 claims. As discussed previously, the record indicates that Mr. Bias was made aware of the alleged retaliation by June 30, 2010,[5] (Rec. Doc. 44-2 at 8-12) and that this action was filed on September 5, 2012 (Rec. Doc. 1). Although state law dictates the statue of limitations period for a § 1983 claim, federal law determines the point at which such claim accrues. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). "Although the [state] limitations period applies, federal law governs when a § 1983 claim accrues, and '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* at 620–21 (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)). Under Louisiana law, "[d]elictual actions are subject to a liberative prescription of one year." LA. CIV. CODE art. 3492. Here, Mr. Bias' § 1983 claims are prescribed because he filed this action over a year after he became aware of the alleged retaliation.[6]

---

[5] The movants suggest that Mr. Bias was aware even earlier because he sent an e-mail message on May 18, 2010, that indicated it was "the PRINCIPAL of the high school who retaliated against [him] by communicating to the assignment monitor a need to have [him] transferred." (Rec. Doc. 44-1 at 10). However, they have misstated the date of that e-mail, which was actually sent on May 18, 2011. (Rec. Doc. 44-2 at 13)

[6] However, even assuming that his § 1983 claim alleging violations of his First Amendment rights were not prescribed, it would be dismissed because it is not plausible. The Fifth Circuit has held:

14

### G.     State Law Claims

Next, the movants argue that the statute of limitations bars any state law claims, as well. As referenced above, "[d]elictual actions are subject to a liberative prescription of one year" under Louisiana law. LA. CIV. CODE art. 3492. Unlike federal law, however, "[t]his prescription commences to run from the day injury or damage is sustained." *Id.* Even if the statute of limitations began to accrue when he discovered the retaliation—which occurred far later than when the retaliation occurred or was sustained—any state law claims are prescribed because, as noted above, he filed this action a year after that discovery.

### H.     Duplicative Claims

Next, the movants argue that the claims against Mr. Foster and Mr. Stant in their official capacities should be dismissed because they are duplicative of the claims against Tangipahoa Parish School Board. Mr. Bias, in response, stated that he "agrees that his claims against [Mr. Foster and Mr. Stant] in their official capacity are duplicative to his claim against Tangipahoa

---

A First Amendment retaliation claim must include facts showing (1) that the employee's speech involved a matter of public concern, (2) that the employee suffered an adverse employment action for exercising her First Amendment rights, and (3) that the employee's exercise of free speech was a substantial or motivating factor in the adverse employment action.

*Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998).

Without considering whether Mr. Bias' speech was a matter of public concern or whether his exercise of that speech was a substantial or motivating factor, the Court considers whether Mr. Stant's activity constituted an adverse employment action. Generally, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* at 376 (internal quotation marks omitted). "Although some actions may have had the effect of chilling [the employee's] protected speech, they are not actionable." *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). For instance, "mere accusations [by an employer against the employee], without more, are not adverse employment actions." *Id.* Here, any conversation between Mr. Stant and Mr. Bias' supervisor is akin to an accusation, because Mr. Stant, an employee of the Tangipahoa Parish School Board, did not possess the authority to discharge, demote, refuse to hire, refuse to promote, or reprimand Mr. Bias, an employee of the Marine Corps.[6] Even assuming that Marine Corps relied solely on Mr. Stant's communication in its decision to transfer Mr. Bias, the Marine Corps not Mr. Stant, would be liable for any adverse employment action. In such an instance, the Fifth Circuit has stated that a "regular assignment . . . does not amount to a sanction." *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). This seems especially relevant where the individual is an employee of the Marine Corps, which has broad discretion in reassigning its members.

15

Parish School Board." (Rec. Doc. 45 at 6). Because "it is proper to dismiss allegations against municipal officers in their official capacities when the allegations duplicate claims against the governmental entity itself," *Thompson v. Connick*, 578 F.3d 293, 314 (5th Cir. 2009), the claims against Mr. Foster and Mr. Stant in their official capacities must be dismissed.[7]

## IV.   CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that Mr. Foster, Mr. Stant, and Tangipahoa Parish School Board's motion to dismiss or, alternatively, motion for summary judgment (Rec. Doc. 44) is **GRANTED IN PART** and **DENIED IN PART** and that Mr. Bias' FCA retaliation claim, § 1983 claims, and state law claims against Tangipahoa Parish School Board and all claims against Mr. Foster and Mr. Stant in their official capacities are **DISMISSED**.

New Orleans, Louisiana, this 25th day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[7] However, because only the § 1983 claims and state law claim—and not the FCA claims—were brought against Mr. Stant and Mr. Foster in their individual capacities, they have already been dismissed.