UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* RONALD BIAS | CIVIL ACTION |
| VERSUS | NO. 12-2202 |
| TANGIPAHOA PARISH SCHOOL BOARD, ET AL. | SECTION "L" |

**ORDER & REASONS**

Before the Court are cross-motions for summary judgment from relator Ronald Bias, (Rec. Doc. 100), and the sole remaining Defendant Tangipahoa Parish School Board ("TPSB"), (Rec. Doc. 103). Having considered the applicable law, the parties' briefs, and the evidence submitted, the Court now issues this order and reasons.

**I.   BACKGROUND**

This action arises out of an alleged misappropriation of United States Marine Corps funds and resulting retaliation. On November 1, 2006, Realtor Ronald Bias retired from the Marine Corps as a lieutenant colonel. Following his retirement, he was employed by the Tangipahoa Parish School Board as a senior marine instructor for the Junior Officers' Training Corps ("JROTC") at Amite High School. On June 18, 2009, the United States Marine Corps contacted Mr. Bias to inform him that it had mistakenly allowed him to retire too early—he had served only 18 years, which is short of the required 20 years. As a result of this error, the Marine Corps had paid Mr. Bias $106,000 for which he had been ineligible. Accordingly, he was provided with the option of repaying those benefits or re-enlisting for a period of 15 months so as to become eligible for retirement. Mr. Bias chose the latter.

Ordinarily, JROTC positions are filled by retired officers who are certified by the Marine Corps but employed by the schools themselves, as Mr. Bias had been. Perhaps in recognition of

the difficulty caused by its error, the Marine Corps varied from its usual policy and assigned Mr. Bias to the JROTC at Amite High School, where he was to continue as a senior marine instructor. Unlike the usual JROTC officer, he would be employed by the Marine Corps. He received his orders on July 10, 2009, and began work shortly thereafter. According to Mr. Bias, he was informed that he would remain at the Amite High School assignment for 15 months, at which point he could either re-enlist or retire.

As the senior marine instructor, Mr. Bias supervised Mr. Foster, a marine instructor and retired master sergeant in the Marine Corps, and reported to Mr. Stant, principal of Amite High School. Both Mr. Foster and Mr. Stant were employees of the Tangipahoa Parish School Board. Soon after he was assigned to Amite High School, Mr. Bias alleges that he became aware that Mr. Foster planned to request that the Marine Corps reimburse him for non-JROTC activities, including an out-of-state trip by the school's cross-country team. Mr. Bias then notified both Mr. Stant and the Marine Corps of Mr. Foster's intentions. However, with Mr. Stant's approval, Mr. Foster persisted and made the request, which was denied. As a result, in part, Mr. Foster was decertified as a senior instructor with the JROTC. Mr. Bias alleges that, because he had reported the misconduct, Mr. Stant contacted Mr. Bias' Marine Corps supervisor and asked the supervisor to transfer Mr. Bias.

On April 12, 2010, Mr. Bias was informed that he would be transferred if he did not retire. Mr. Bias asserts that this transfer constituted retaliation. (In addition to bringing this action, Mr. Bias also reported Mr. Stant's conduct to the Inspector General of the Marine Corps on October 26, 2010, who determined that the transfer was not reprisal because Mr. Bias had previously been informed that he would be transferred from Amite High School after the 15

months he needed to obtain retired status had elapsed.) Mr. Bias retired on October 31, 2010, and was reemployed as the senior marine instructor at Amite High School on November 3, 2010.

Mr. Bias brought this action on September 5, 2014, against the Tangipahoa Parish School Board as well as Mr. Stant and Mr. Foster, in their official capacities. (Rec. Doc. 1). In his complaint, he asserts (1) an False Claims Act ("FCA") *qui tam* claim for the false billing of goods and services not rendered, (2) an FCA *qui tam* claim for conspiracy to submit false claims, and (3) an FCA retaliation claim. On January 7, 2013, the United States of America filed a notice of its election to decline intervention. (Rec. Doc. 2). On January 15, 2013, the complaint was unsealed and served. (Rec. Doc. 3). On February 15, 2013, Mr. Bias moved for leave to file an amended complaint (Rec. Doc. 16), which the Court granted on March 6, 2013 (Rec. Doc. 25). In the amended complaint, Mr. Bias brought additional claims, this time including Mr. Stant and Mr. Foster in both their official and individual capacities. (Rec. Doc. 26). The amended complaint includes (4) a § 1983 claim for violations of the First Amendment to the United States Constitution, (5) a state law claim for violations of Article I, Section 7 of the Louisiana Constitution, and (6) a § 1983 claim for violations of the Due Process Clause of the United States Constitution. On May 15, 2015, the Court dismissed all claims except the FCA *qui tam* claims against TPSB for (1) false billing of services not rendered and (2) conspiracy to submit false claims. (Rec. Doc. 62).

## II.   PRESENT MOTIONS

Both Mr. Bias and TPSB now move for summary judgment. Mr. Bias argues that the evidence plainly establishes an FCA violation under 31 U.S.C. § 3729(a)(1)(B) for knowingly submitting a false claim to the U.S. Government for services not provided. (Rec. Doc. 100). Specifically, Mr. Bias argues that evidence establishes that (1) the claimant used a record or statement, (2) the record was false and claimants knew it was false, and (3) that falsity was

3

material. Mr. Bias also argues that Mr. Stant discovered that the submitted government claims were false shortly after submitting the claim. Finally, Mr. Bias argues that Mr. Stant and Mr. Foster are both TPSB employees, thus establish TPSB violations of the FCA.

In contrast, TPSB argues that summary judgment should be granted in its favor. (Rec. 103). First, TPSB argues that Mr. Bias not alleged any facts to establish vicarious liability of TPSB on account of its employees Foster and Stant because neither employee acted with the intent to benefit TPSB. Second, TPSB argues that Mr. Bias has failed to produce sufficient admissible evidence to support his FCA claim(s). Third, TPSB argues that Mr. Bias has failed to prove the necessary elements of any FCA claim. Fourth, TPSB claims that the "government knowledge defense" is applicable here because the government knew and approved the particulars of the claim.

Both parties respond in opposition to each other's motions for summary judgment, essentially re-iterating the arguments made in their own affirmative motions for summary judgment and rebutting the arguments of opposing counsel. (Rec. Docs. 111, 113).

### III.    LAW & ANALYSIS

####     A.    Standard of Law – Summary Judgment

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the non-moving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir.

2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255.

### B.   Statement of Law – FCA Claim

The FCA gives rise to three causes of action under 31 U.S.C. § 3729(a)(1) that are at issue here:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> (C) conspires to commit a violation of subparagraph (A), [or] (B);

31 U.S.C. § 3729(a)(1). The Fifth Circuit has adopted a four-factor test to establish an FCA violation: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material;[1] and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (internal quotations omitted).

The scienter required in an FCA violation must be more than a mens rea of mere negligence or even gross negligence. *Id.* at 468. Rather, it must be established that the defendant

---

[1] Even though the requirement of "materiality" is not in the statutory text of every kind of FCA claim, the Fifth Circuit has made clear that materiality is an element for every FCA claim. *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) ("In addition to the requirements found in the text, our jurisprudence holds that a false or fraudulent claim or statement violates the FCA only if it is material.").

had "(1) actual knowledge of falsity, (2) acted with deliberate ignorance of the truth or falsity of the information provided, or (3) acted with reckless disregard of the truth or falsity of the information provided when the Defendant[] fraudulently induced [the government payment.]" *Id.* Additionally, a conspiracy-based FCA claim required proof of (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim and (2) at least one act performed in furtherance of that agreement. *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

### C. Tardiness of the Motions

The Court first notes that both motions for summary judgment were filed after the pretrial motion deadline set forth in the Scheduling Order. The Scheduling Order required that all motions be filed in sufficient time <u>to permit submission by</u> December 17, 2014 – which means, under Local Rule 7.2, that any motion must have been <u>filed</u> by December 2, 2014. (Rec. Doc. 72). The summary judgment motions of both Mr. Bias and TPSB were filed late by counsel. Mr. Bias filed his motion two weeks late, and TPSB filed its motion three weeks late. Although the Court may deny the motions on this ground alone, it will address the merits for the reasons that follow.

### D. Vicarious Liability

In considering the parties' summary judgment arguments, the Court must first determine the threshold question of whether TPSB may be held vicariously liable for the actions of its employees, Mr. Foster or Mr. Stant. TPSB correctly notes that under the FCA, an employer may be held vicariously liable for the wrongdoings of an employee when: (1) the employee is acting within the scope of employment and (2) with the purpose of benefitting the employer. *United States v. Ridglea State Bank,* 357 F.2d 495, 500 (5th Cir. 1966). Applying the facts here to this test, the Court concludes that TPSB may be held vicarious liable for the actions of Mr. Foster

and Mr. Stant. Both are employees. There is no persuasive argument or evidence that, at the time that the alleged fraud took place in the summer of 2009, either employee was acting outside the scope of employment. Rather, they were involved in organizing a school trip. Moreover, the attempt to secure funding for this trip easily establishes a benefit – money – to the employer. Therefore, TPSB may be held vicarious liable.[2]

### E. Sufficiency of the Evidence

The Court now turns to the question of whether there exists sufficient admissible evidence to grant summary judgment to either party. The Court may only grant summary judgment if there is no genuine issue of material fact as to the FCA liability of TPSB. Here, the parties do not dispute a number of material facts. For instance, the parties do not dispute that Mr. Foster and Mr. Stant were involved in planning a school JROTC trip within Louisiana in April 2009. The parties likewise do not dispute that the Louisiana trip was cancelled and that a trip to Florida was planned in its place in September 2009. Finally, the parties do not dispute that the Florida trip took place and that Mr. Foster sought reimbursement from the U.S. Marine Corps for the trip.

However, a number of material facts remain in dispute. On the one hand, Mr. Bias posits that non-JROTC members participated on a trip devoid of any proper ties to the JROTC program. In contrast, Mr. Foster explains that the school included cross-country, non-JROTC members on the training trip for recruitment purposes. More specifically, the parties dispute what constitutes "leadership training" and whether that leadership training, or any other educational activity, occurred on the Florida trip. Notably, the dispute over whether Mr. Foster and Mr. Stant

---

[2] It is also significant that this Court previously accepted the argument of TPSB that the claims against Mr. Foster and Mr. Stant in their official capacities should be dismissed as duplicative because "the claims against employees of a public entity are claims against the entity itself." (Rec. Doc. 62 at 3; *see also* Rec. Doc. 44). Implicit in the conclusion that such claims are duplicative is the acknowledgment that TPSB may be vicariously liable for those employees' actions in their official capacities. To reason otherwise would be inconsistent.

intended to use the trip to recruit non-JROTC members to join is significant as to whether the actions of Mr. Foster and Mr. Stant were fraudulent. Nor does the evidence demonstrably indicate the mental state of Mr. Foster and Mr. Stant in organizing the Florida trip. As scienter is a key element in an FCA claim, the lack of decisive evidence proffered to the Court regarding mental state creates a genuine issue of material fact. Although TPSB argues that much of the evidence offered by Mr. Bias is inadmissible hearsay or has not been authenticated, the Court need not determine whether such evidence is hearsay (or subject to any hearsay exception) because the depositions of Mr. Foster and Mr. Bias make clear that all these facts are in dispute.

These disputed, genuine issues of material facts preclude summary judgment for either party.[3] Even so, in its assessment of the evidence submitted, the Court notes that the issue of FCA liability might be properly resolved on a Rule 50 motion at trial.

## IV.   CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that both parties' motions for summary judgment are **DENIED**.

New Orleans, Louisiana, this 15th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[3] The Court so reasons, notwithstanding the "government knowledge defense" argument of TPSB. Fifth Circuit case law labels that defense, recognized by other circuits, as "inaptly-named" and is better framed as a question of government acquiescence tied to the issue of whether a claim was false. *See* United States v. Southland Mgmt. Corp., 326 F.3d 669, 682 (5th Cir. 2003). Here, the materially disputed mental state of Mr. Foster and Mr. Stant preclude summary judgment on any issue of government acquiescence.