UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD BIAS                               *     CIVIL ACTION NO. 12-2202
                                          *
                                          *     SECTION: "L"(1)
VERSUS                                    *
                                          *     JUDGE ELDON E. FALLON
TANGIPAHOA PARISH SCHOOL                  *
BOARD ET AL.                              *     MAGISTRATE JUDGE
                                          *     JANIS VAN MEERVELD
**************************************     *

ORDER AND REASONS

Before the Court is the Motion to Compel filed by the Tangipahoa Parish School Board
("TPSB") (Rec. Doc. 178). For the following reasons, the motion is GRANTED in part and
DENIED in part.

Background

Ronald Bias originally filed this lawsuit on September 5, 2012 asserting causes of action
under the False Claims Act ("FCA") on behalf of the United States and a claim for unlawful
retaliation against him for raising the FCA issues. He later amended to add § 1983 and state law
claims. He alleges that he was employed by the TPSB as the Senior Marine Instructor in the US
Marine Corps JROTC program at Amite High School. He was then recalled to active duty by the
Marine Corps and assigned by the Marine Corps to serve in essentially the same position he had
been serving in, albeit now employed by the Marine Corps. He submits that he worked under the
supervision of the principal of Amite High School (Michael Stant) and supervised Master Sergeant
Carl Foster, who was also an employee of Amite High School. He alleges that in September 2009,
he learned that Foster had requested JROTC funds to pay for a cross-country team trip to Destin,
Florida, but this trip was not affiliated with JROTC. Bias alleges that he informed the Regional
Director of the Marine Corps JROTC, who informed Bias that the school must ensure that the

1

school would pay for the trip expenses. Bias alleges that he relayed this information to Stant and that although Stant agreed, Stant approved Foster's submission for reimbursement of expenses for the trip in the amount of $2,656.45 to the Marine Corps. The request was denied, but, Bias alleges, Stant later filed a claim for expenses for the trip from the JROTC activity account and funds were disbursed. Bias alleges that in April 2010, he discovered that Foster, with Stant's approval, used $197.57 in JROTC activity account funds for concession stand supplies for an event unrelated to JROTC. Bias reported this to the Regional Director.

After attempting to report the alleged false claims submitted by Foster and Stant, Bias alleges he suffered retaliation in the form of harassment and constructive discharge from his position.  Bias alleges that the Marine Corps JROTC headquarters sent orders to replace Foster with Bias as the responsible officer for the school's JROTC program, but Foster did not turn over the orders and instead called Headquarters and questioned them. He alleges that after Foster was counselled by the Regional Director in January 2010 for his mishandling of funds, Foster refused to conduct physical training with cadets leaving Bias to do the training alone, Foster refused to plan a JROTC summer trip in 2010, and he stopped supervising lunch detention. Bias alleges that Foster and Stant labeled Bias a backstabber and told other teachers that Bias would not be reappointed. He further alleges that Stant would call Bias into meetings and shout at him and badger him into changing positions. Bias alleges that Stant reported to the superintendent that Bias was not attending graduation ceremonies suggesting that Bias was derelict in his duties, although Stant knew that Bias was attending the wake and funeral of his brother-in-law. Bias alleges that Stant threatened him with an adverse evaluation if he did not revise his evaluation of Foster to exclude reference to Foster's official counseling and insubordination. Importantly, he alleges that Foster and Stant attempted to have Bias removed from his position at Amite High School by

contacting Marine Corps Headquarters requesting that Bias be transferred. Bias alleges that when the Marine Corps ordered him to leave Amite and report to New Orleans four months later, he had no choice but to retire from the military because he could not move his family, could not afford to maintain two residences, and if he had moved to the New Orleans duty station he would not have a chance at promotion. This, he submits, amounts to constructive discharge from his military position. However, he stayed on as a TPSB employee until 2014. As a result of the alleged retaliation, Bias asserts he suffered "emotional pain and mental anguish, physiological harm, together with serious economic hardship, including lost wages, pay allowances and benefits." (Complaint, ¶ 61, Rec. Doc. 1).

On March 26, 2014, the district court granted summary judgment dismissing Bias's FCA retaliation claims, § 1983 claims and state law claims against TPSB and two TPSB employees. On January 23, 2015 and February 4, 2015, the district court dismissed the Bias's FCA claims and issued a Rule 54(b) judgment, which allowed Bias to appeal the summary judgment. On appeal, the Fifth Circuit affirmed in part and reversed in part, resurrecting Bias's FCA retaliation claims against TPSB. This claim has been remanded to the District Court.

TPSB propounded its Fourth Set of Discovery Requests to Bias on November 27, 2016. Bias responded in part and objected in part. As discussed further below, TPSB challenges Bias's objections to Requests for Production 53, 54 and 55.

<u>Law and Analysis</u>

*1.  Standard of Review*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

This Court construes relevance broadly, but it remains anchored by the parties' pleadings. See Fed. R. Civ. Proc. 26 advisory committee's notes to 2000 amendment (explaining that in analyzing relevance, the parties should "focus on the actual claims and defenses involved in the action," but that "a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action"); see also XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)) (concluding that following the 2015 amendments to the Rules, "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on' any party's claim or defense.'"). Thus, "[t]o implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." Thibault v. BellSouth Telecommunications, Inc., No. CIV.A. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008) (M.J. Wilkinson).

In addition to being relevant, discovery must be proportional. In determining proportionality, the parties (and the Court if called to weigh in) should consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(1).  As the comments to the 2015 amendments explain, the court must "consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id. advisory committee's 2015 Amendment notes.

Rule 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D).

2.  *Request for Production No. 53*

TPSB requested the following:

Please provide copies of your United States Military retirement account statements from 2006 to present.

Bias responded:

See bates 168. Also, see Bias's 1099 forms that document Bias's military-retirement income at bates 2801-2805 for years 2012 to 2016. Plaintiff otherwise objects to this request as calling for information unduly burdensome to obtain, irrelevant in part and not reasonable calculated to lead to discoverable evidence.

(Rec. Doc. 178-2, at 29). TPSB notes that Bates 168 is a Retiree Account Statement with an effective date of December 2, 2012 (Rec. Doc. 178-1, at 6). TPSB submits that it is seeking the same Retiree Account Statement for 2006 through the present. Id.  Since providing his initial response, Bias has provided TPSB with an additional Retiree Account Statement with an effective date of January 18, 2013. Id.  at 7. Although Bias's written response refers to 1099 forms from 2012 through 2016, TPSB indicates that it has received 1099-R forms for 2009 and 2011-2015. Id. The parties seemed to agree that no 1099-R forms existed for 2010. At oral argument, TPSB's counsel acknowledged that the 1099-R forms contain the retirement pay amount, but noted that the Retiree Account Statements contain additional breakdowns of the figures.

TPSB argues that the requested information is relevant to the calculation of Bias's damages. TPSB notes that Bias was retired from the military from 2006 through 2009 when he was recalled to active duty because the military determined he was not eligible for retirement. Id. Starting in 2008, he was employed by TPSB. Id. Thus, TPSB argues, Bias's retirement pay and benefits during this period are relevant to the damages he alleges resulted from him being "forced" to retire in 2010. Id. Counsel clarified at oral argument that if Bias voluntarily retired in 2006, the circumstances of this retirement could cast doubt on his position that he was forced to retire in 2010.

Bias argues that the 1099-R forms are responsive to TPSB's request because they provide the information TPSB seeks in a less intrusive manner than the Retiree Account Statements that TPSB has requested. (Rec. Doc. 180, at 5). Bias adds that 1099-R income is not admissible evidence because it represents a collateral source of benefits that TPSB did not contribute to and, therefore, these benefits cannot provide an offset. Id. at 5-6. Bias adds that IRS information older than 2009 is not relevant because Bias seeks lost wages following the alleged adverse action of a potential job transfer in 2010. Id. at 6. No damages are sought for the period before 2009. Id.

The main issue is whether Bias is obligated to provide information about his retirement payments prior to 2009. Bias's sole remaining claim is for alleged retaliation in the form of harassment and constructive discharge from his position, and the damages he alleges he has suffered are "emotional pain and mental anguish, physiological harm, together with serious economic hardship, including lost wages, pay allowances and benefits." (Complaint, ¶ 61, Rec. Doc. 1). As this Court construes Bias's claim, he argues that if he had not been subject to retaliation, the Marine Corps would not have sought to transfer him to New Orleans in 2010. Bias claims the transfer would have reduced his chances at promotion because the transfer would have

been interpreted as a failure, and further, he asserts that he could not move his family to New Orleans so soon after Hurricane Katrina. Id. ¶ 51. "Faced with these untenable choices," Bias retired. Id. TPSB submits that although Bias seems to claim that he would have continued his military service for many years, the fact that he retired in 2006 by his own choice could show that he would have chosen to retire in 2010 even if the transfer orders had not been made. TPSB submits that Bias's retirement pay in 2006, 2007 and 2008 is relevant to that issue. The Court agrees and finds that information regarding Bias's retirement pay and other income in 2006, 2007 and 2008 is relevant.

Although TPSB seeks the Retiree Account Statements, TPSB appears to concede that the information it seeks about Bias's retirement pay can be discerned from the 1099-R forms. Counsel's reference to the additional breakdowns without an explanation of their relevance is not sufficient to justify the production of the Retiree Account Statements in addition to the 1099-R forms. Bias's counsel indicated at oral argument that he had no Retiree Account Statements in his possession other than those produced. Because TPSB can obtain information regarding retirement pay from the 1099-R forms, the Court finds these sufficiently responsive to TPSB's request. Accordingly, Bias shall produce the 1099-R forms for the years 2006, 2007 and 2008, and shall not be required to produce the Retiree Account Statements at this time.

     *3.  Request for Production No. 54.*

     TPSB requested the following:

Please provide copies of all federal and state income tax returns with all attachments thereto, Forms W-2, Forms 1099, and all wage and lost wage information and documentation that you have from 2007 to present.

     Bias responded:

Bias's federal income tax returns are at bates 2952-2962 for years 2011, 2012, 2014 and 2015. When Bias returns to Houston, he will provide you with the 2013 return in the next

few days. See 1099 forms at 2801-2805 for years 2012 to 2016. See W-2 forms at bates 165-167. See paycheck stubs at bates 2820-31 from August 2009 to July 2010. Plaintiff otherwise objects to this request as calling for information unduly burdensome, irrelevant in part and not reasonable calculated to lead to discoverable evidence.

(Rec. Doc. 178-2, at 29). TPSB notes that after providing the above response, Bias provided several W-2 and 1099-R tax forms from 2009 through 2015. (Rec. Doc. 178-1, at 8). TPSB argues that it needs the requested information, including for years prior to 2009, in order to determine Bias's alleged damages. Id.  It submits that it is Bias's burden to show that the requested information is not relevant and that he has failed to do so. Id.  at 9.

Bias argues that tax documents prior to 2009 are not relevant because he does not seek damages for this period. (Rec. Doc. 180, at 5-6). As discussed by the Court above, Bias's retirement and other income from 2006 to 2009 could be relevant to determining the basis for Bias's decision to retire from the military in 2010. Accordingly, Bias shall produce copies of his 2006, 2007 and 2008 federal tax returns with all attachments thereto, including forms W-2 and 1099. To the extent he has not already done so, he shall also produce his federal tax returns with all attachments thereto, including forms W-2 and 1099 for the years 2009, 2010, 2011, 2012, 2013, 2014 and 2015.

4.  *Request for Production No. 55:*

TPSB requested the following:

Please properly execute and return to me as soon as possible the following eight (8) forms that are enclosed herewith:

1. Employment Records Authorization;
2. Standard Form 180/Request Pertaining to Military Records;
3. Form SSA-7050/Request for Social Security Earnings Information;
4. Louisiana Tax Information Disclosure Authorization; and
5. Form 4506/Request for Copy of Tax Return.

Bias responded:

Plaintiff provided his federal income tax returns as found in his response to School Board's RFP#54. School Board's request# 55, therefore, is not required. Plaintiff has also provided 1099 information and a Retiree Account Statement (bates 168) that can suffice for retirement information.

Plaintiff objects to the relevance of the other requests. Plaintiff's claim addresses School Board retaliation. He has been gainfully employed since then in a similar civilian position as he had while at the School Board. Information on Bias's past employment before or after the School Board's employment is not relevant. Similarly, there is no relevance as to School Board's request for Bias's social security information. As to the military records, Bias left the military while at the School Board. There is no relevance to acquiring military history prior to Bias's employment at the School Board. Similarly, there is no relevance in acquiring Bias's tax information from the State of Louisiana. Bias is already providing his federal income tax and this contains the relevant information from the Louisiana tax return.

(Rec. Doc. 178-2, at 29-30). TPSB argues that Bias's military records are relevant because Bias's retaliation claim is based on his assertion that a TPSB employee caused his transfer by the military. (Rec. Doc. 178-1, at 9). TPSB submits that Bias's military records will include a history of transfer orders issued to him by the military and may offer further information regarding why the Marine Corps transferred him. Id. at 10. At oral argument, TPSB's counsel conceded that she did not need information as far back as 1983 and that records going back to 2005 or 2006 would be sufficient.

Bias responds that his military records will not reveal why the Marine Corps transferred him. (Rec. Doc. 180, at 4). He says this can only be determined by asking the Marine Corps assignments monitor. Id. It appears that TPSB has been provided authorization by the military to conduct this deposition but it has not yet done so. Id. Bias argues that his lawsuit does not address his military career prior to the acts alleged in the lawsuit. Id. He also argues that for some of his military career he had a top secret security information clearance and that this information could cause grave danger to national security if disclosed. Id. Bias adds that Carl Foster sued him for defamation in 2016 and that, although the Louisiana First Circuit Court of Appeals dismissed the case, Foster has filed a writ to the Louisiana Supreme Court. Id. Bias fears that his military record

will be forwarded to Foster and he requests that if the records are required to be disclosed that a protective order be put into place. Id. at 4-5. Bias also requests an *in camera* review of the documents. Id. at 4. His counsel clarified at oral argument that he is concerned sensitive national security information could be revealed.  Bias notes that he has agreed to authorize the Marine Corps JROTC headquarters to provide TPSB with copies of his annual reviews from 2008 through 2017. Id. at 5. At oral argument, counsel confirmed that Bias would authorize TPSB to obtain his JROTC instructor records, which are available at the Marine Corps JROTC headquarters, from 2008 through the present.

The Court finds that Bias's military records are relevant to the determination of why Bias was transferred, the central issue in this litigation. While Bias claims that the records will not provide the basis for the transfer order, the Court finds that there may be information in the records that will shed light on the reason. Additionally, Bias asserts that had he not been constructively discharged, he would have been eligible for promotion two months later. His military records could reveal information about whether such promotion was likely to occur.  However, the Court recognizes that the military records may contain confidential information that is not relevant to this case. Accordingly, the Court agrees that Bias's military records as early as 1983 are not proportional to the needs of this case. Because TPSB has conceded that records from 2005 or 2006 would be sufficient, the Court finds that Bias's military records from 2005 through the present are within the scope of discovery and Bias shall authorize their release.  Additionally, the Court finds that the issuance of a protective order to ensure that the military records are only used by TPSB in this case is appropriate.  With regards to Bias's concern that the military records might contain information related to national security, the Court is confident that the Marine Corps will not

disclose any information in response to a subpoena or records request that would put national security at risk. For this reason, the Court declines the request that it conduct an in camera review.

Bias argues that if TPSB seeks to obtain his personnel files from his employment after he left the TPSB, he could suffer injury. (Rec. Doc. 180, at 2). He argues that if his prospective or current employers learn about his legal claims, it could affect his continued employment relationship, and therefore a request for personnel records should only be allowed as a last resort. Id. at 2-3. Bias argues that his actions after he left the TPSB in 2014 are not relevant to this lawsuit. Id. at 3. Bias notes that TPSB has not raised an after-acquired evidence affirmative defense such that his more recent employment records might be relevant. Id. Bias adds that he stayed at his TPSB position for four years rather than move to a new duty station with no chance of promotion. Id. at 2. Thus, TPSB has records for his first four years of employment following the transfer order. The parties indicated at oral argument that Bias has had two jobs since then, both in Texas. Bias argues that mitigation of damages is not an issue here since he has been continuously employed. Id.

With regards to Bias's employment records with his employers after he left the TPSB in 2014, the Court finds that in the context of this litigation, these records are only marginally relevant, at best. His earnings records are, of course, relevant to the determination of his damages, but this information has already been disclosed in the form of Bias's tax records. His performance at his current job does not affect a determination of the damages to which he would be entitled if he proves that the transfer order was retaliatory and amounted to constructive discharge. Indeed, TPSB conceded at oral argument that there is no claim related to Bias's performance. Instead, TPSB hopes to find a pattern of interpersonal problems in employment and/or other conduct which might justify a transfer order or presumably justify any animus against Bias other than a retaliatory

animus. Here, such an unlimited search constitutes an impermissible fishing expedition. As Bias points out, TPSB already has Bias's personnel file from 2008 through 2014 when he was working at a TPSB school. Additionally, as discussed above, Bias agreed at oral argument to authorize the production by the Marine Corps JROTC office of Bias's instructor files from 2008 through the present, which he says will include his performance evaluations. In light of the minimal relevance of Bias's employment records as expressed by TPSB, the Court finds that the aforementioned TPSB personnel files from 2008 through 2014 and JROTC instructor records from 2018 through the present are sufficient. The Court will not compel Bias to authorize disclosure of his personnel files with his employers after he left the TPSB in 2014.

With regards to the social security records and Louisiana tax records, TPSB counsel conceded at oral argument that TPSB does not have an independent reason for seeking these records and that Bias's federal tax records would be sufficient. Accordingly, the Court will not compel Bias to sign authorizations for these records at this time. If Bias is unable to produce copies of the tax returns as required by this Order, the Court will reconsider requiring these authorizations along with the IRS tax record authorizations.

<u>Conclusion</u>

For the foregoing reasons, the Motion to Compel is GRANTED in part. On or before March 9, 2017, Bias shall produce to TPSB copies of his 2006, 2007 and 2008 federal tax returns with all attachments thereto, including forms W-2 and 1099. To the extent he has not already done so, by March 9, 2017, he shall produce to TPSB his federal tax returns with all attachments thereto, including forms W-2 and 1099 for the years 2009, 2010, 2011, 2012, 2013, 2014 and 2015. Bias shall sign and complete the Standard Form 180/Request Pertaining to Military Records with Section II filled out to specify "Other" records, with such records to be specified as "all documents

in official military personnel file, except medical records, from the period from January 1, 2005 through the present" and shall deliver a copy to TPSB by February 23, 2017. The parties will cooperate to obtain Bias's JROTC instructor records from the Marine Corps JROTC headquarters. Bias will either assist by signing an appropriate authorization or obtaining the documents himself. The aforementioned military records and JROTC instructor records shall be subject to a protective order that such documents shall only be used in this matter, shall not be disclosed outside of the trial teams of the parties in this case, and shall not be filed into the record without a request that such documents be filed under seal along with supporting memoranda in accordance with Local Rule 5.6. The parties shall jointly submit a protective order regarding confidential documents to the Court. In all other respects, Motion to Compel is DENIED.

 New Orleans, Louisiana, this 21st day of February, 2017.

Janis van Meerveld
United States Magistrate Judge