# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex. rel.* RONALD BIAS<br><br>VERSUS<br><br>TANGIPAHOA PARISH SCHOOL BOARD, ET AL. | CIVIL ACTION<br><br>NO. 12-2202<br><br>SECTION "L" (1) |

## ORDER AND REASONS

Before the Court is Defendant Tangipahoa Parish School Board's motion for judgment on the pleadings. R. Doc. 195. Plaintiff opposes this motion. R. Doc. 213. Additionally, before the Court are cross-motions for summary judgment from relator Ronald Bias, and the sole remaining Defendant Tangipahoa Parish School Board ("TPSB"). R. Docs. 197, 206. Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

## I.  BACKGROUND

This action arises out of an alleged misappropriation of United States Marine Corps ("USMC") funds and resulting retaliation. On November 1, 2006, relator Ronald Bias retired from the Marine Corps as a lieutenant colonel. Following his retirement, he was employed by the Tangipahoa Parish School Board as a senior marine instructor for the Junior Officers' Training Corps ("JROTC") at Amite High School. On June 18, 2009, the USMC contacted Mr. Bias to inform him that it had mistakenly allowed him to retire two years early. As a result of this error, the Marine Corps paid Mr. Bias $106,000 for which he had been ineligible. Accordingly, he was provided with the option of repaying those benefits or re-enlisting for a period of 15 months so as to become eligible for retirement. Mr. Bias chose the latter. Although JROTC positions are ordinarily filled by retired officers and employed by the schools, the USMC allowed Plaintiff Bias to continue his position as a JROTC instructor at Amite High School in order to fulfill his re-

enlistment. Therefore, Mr. Bias was to be employed by the USMC rather than the school. According to Mr. Bias, he was informed that he would remain at this assignment for 15 months, at which point he could either re-enlist or retire.

As the senior marine instructor, Mr. Bias supervised Mr. Foster, a marine instructor and retired master sergeant in the Marine Corps, and reported to Mr. Stant, principal of Amite High School, both of whom were employees of the Tangipahoa Parish School Board. Mr. Bias alleges that in September 2009, he became aware that Mr. Foster planned to request that the Marine Corps reimburse him for non-JROTC activities, including an out-of-state trip by the school's cross-country team. Mr. Bias then notified both Mr. Stant and the Marine Corps of Mr. Foster's intentions. However, with Mr. Stant's approval, Mr. Foster persisted and made the request, which was denied. As a result, in part, Mr. Foster was decertified as a senior instructor with the JROTC. Mr. Bias reported an additional alleged misappropriation in April 2010, which involved reimbursement for non-JROTC related concession stand supplies.

Later that month, on April 12, 2010, Mr. Bias was informed by the Marine Corps that he would be transferred to a New Orleans school district if he did not retire. Mr. Bias asserts that this transfer constituted retaliation against him for "whistleblowing." Because Bias believed the transfer would be detrimental to his career and would cause considerable strain to his family, Mr. Bias chose to retire instead of taking the assignment. His retirement occurred sometime after he had completed his 15 months of active service. Additionally, Mr. Bias asserts that between the time of the reported misappropriation of funds and the transfer order, Stant and Foster attempted to undermine his ability to perform his job by shouting at him, badgering him at school meetings, and spreading rumors.

In September 2012, Bias filed this lawsuit against the Tangipahoa Parish School Board as well as Mr. Stant and Mr. Foster, in their official capacities. R. Doc. 1. He asserted claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, including a *qui tam* action and a retaliation claim. Bias later amended his complaint to add claims under 42 U.S.C. § 1983 and state law against the defendants. The defendants moved to dismiss for failure to state a claim or, alternatively, for summary judgment. This Court, relying on Rule 12(b)(6), dismissed Bias's FCA retaliation claim because he had not sufficiently alleged that the defendants caused his employer, the Marine Corps, to transfer him. The Court additionally dismissed Bias's Section 1983 and state law claims as time-barred. After the Court entered a scheduling order regarding Bias's sole remaining claim, the FCA *qui tam* action, Bias moved for leave to file a second amended complaint. This was denied by the magistrate judge and that denial was affirmed by this Court. The parties settled the remaining FCA claim and final judgment was entered on the previously-dismissed claims in the defendants' favor in January 2015.

Bias timely appealed the Court's ruling and in March 2016, the Fifth Circuit affirmed the ruling in part and remanded in part. R. Doc. 129. The Fifth Circuit affirmed the district court's dismissal of the Section 1983 claims and state law claims as time-barred. However, the Fifth Circuit reversed the dismissal of Bias's FCA retaliation claim against the School Board and remanded it to the district court in accordance with its opinion. R. Doc. 129. In reversing the district court's dismissal of the claim, the Fifth Circuit found that although Bias was employed by a different entity, the School Board may be liable because, under § 3730(h), liability extends to defendants "by whom plaintiffs are employed, with whom they contract, or for whom they are agents." R. Doc. 129-1 at 10. The Fifth Circuit concluded, "exactly what the relationship was between Bias and the School board is unclear. It is plausible, though that he was, as claimed, an

3

agent [of TPSB]." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 325 (5th Cir. 2016). Additionally, the Fifth Circuit concluded that Foster and Stant's attempts to undermine Bias's ability to perform his job plausibly constituted retaliatory acts. *Id.* at 327.

## II. PRESENT MOTIONS

Before the Court is Defendant's Motion for Judgment on the Pleadings. Also before the Court are the parties' cross-motions for summary judgment.

Defendnat TPSB first asserts that Plaintiff Bias should be judicially estopped from bringing the present claim because Plaintiff failed to disclose the claim to the Bankruptcy Court during his bankruptcy proceeding. R. Doc. 195-1 at 3-6. Plaintiff Bias responds arguing that there is confusion within the Bankruptcy Code and Plaintiff was not required to disclose the present claim because he was not directed by the Court or his attorney to do so. R. Doc. 213 at 3-4. Second, Defendant alleges that Plaintiff's claims are barred by the *Feres* doctrine because adjudication of the claims will required the Court to improperly interfere with military decisions. R. Doc. 197-1 at 13. Finally, Defendant argues that it is entitled to summary judgment because Plaintiff has failed to satisfy the elements of the FCA retaliation claim. R. Doc. 197-1 at 11.

In his motion for summary judgment, Plaintiff Bias argues that he has satisfied all required elements of the FCA retaliation claim. R. Doc. 206-1 at 1.

The present motions raise three issues: 1) judicial estoppel, 2) the *Feres* doctrine, and 3) summary judgment on Plaintiff's FCA retaliation claim.

## III. LAW & ANALYSIS

Defendant TPSB seeks a Rule 12(c) judgment on the pleadings based on the doctrine of judicial estoppel.

### A. Rule 12(c) Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion pursuant to Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "[A]ll well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B. Judicial Estoppel

"Judicial estoppel 'is an equitable doctrine invoked by a court at its discretion' for the purpose of 'protect[ing] the integrity of the judicial process.'" *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015). "[T]he Supreme Court has refused to establish inflexible prerequisite or an exhaustive formula for determining the applicability of judicial estoppel…." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc). However, when determining whether judicial estoppel applies, courts consider whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position, (2) a court has accepted the prior position; and (3) the party did not act inadvertently." *Id.* "[T]here is no *per se* rule estopping any party who fails to disclose

5

potential claims to a bankruptucy court"; rather, discretion is left to the trial court. *Long*, 798 F.3d at 271.

"[A]gainst the backdrop of the bankruptcy system … judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system…." *Id.* "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

"It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) (citing 11 U.S.C. § 521(1)). Debtors remain under a duty to disclose potential assets even when it is unclear whether those assets will be part of the bankruptcy estate and even when those assets are ultimately determined to be outside of the bankruptcy estate. *United States v. Beard*, 913 F.2d 193, 197 (5th Cir. 1990); *see also Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quoting *In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013)) ("'[D]ebtors have a duty to disclose to the bankruptcy court' whether post-confirmation assets are treated as property of the estate or vested in the debtor."); *In re Aycock*, 10-80516, 2014 WL 1047803, at *3 (Bankr. W.D. La. Mar. 18, 2014) ("*Flugence* therefore sets forth the binding precedent that the debtor in Chapter 13 has a continuing duty to disclose the post-confirmation acquired asset so that its status as property of or outside the estate may be determined by the Bankruptcy Court."). Furthermore, "[w]hen the plan or order confirming the plan provides that the property of the estate revests in the debtor at confirmation, only those property interests existing at confirmation revest in the debtor. The

6

estate is not extinguished by confirmation, but rather is comprised of new property acquired by the debtor post-confirmation … the Debtors' post-confirmation inheritance and post-confirmation business income is property of the estate, and is the proper subject of a plan modification." *In re Wetzel*, 381 B.R. 247, 254 (Bankr. E.D. Wis. 2008). When the debtor/plaintiff fails to disclose a potential legal claim in bankruptcy but then subsequently pursues that claim, they have asserted a plainly inconsistent legal position. *See, e.g.*, *Allen*, 813 F.3d 566; *Flugence*, 738 F.3d 126.

Requiring judicial acceptance "ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized." *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 237 (5th Cir. 2012). "[J]udicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *In re Coastal Plains*, 179 F.3d at 206 (quoting *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir.1988)).

Inadvertence may be demonstrated by showing that debtor/plaintiff was unaware of the inconsistent position or that they had no motive to conceal it from the court. To demonstrate inadvertence, the plaintiff "must show not that she was unaware that she had a duty to disclose her claims but that … she was unaware of the facts giving rise to them." *Jethroe*, 412 F.3d at 601. "Bankruptcy law imposes [a duty to disclose] as long as the debtor has enough information to suggest that he may have a potential claim; the debtor need not know all of the underlying facts of even the legal basis of the claim." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014). "A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment." *Long*, 798 F.3d at 273 (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012)). "'[T]he motivation sub-element is almost always met if

7

a debtor fails to disclose a claim or possible claim to the bankruptcy court' because the 'potential financial benefit resulting from the nondisclosure' makes the motivation in this context self-evident." *Allen*, 813 F.3d at 574 (quoting *Love*, 677 F.3d at 262).

Finally, "a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law." *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 96 (1993). Therefore, Plaintiff's claims that cases clarifying the duty to disclose after his bankruptcy was closed cannot apply in this case are inaccurate.

### C. Discussion

The threshold question before the Court is whether Plaintiff Bias is estopped from pursuing his FCA retaliation claim. Bias has argued that he never had a duty to disclose this claim to the Bankruptcy Court because disclosure of a post-petition lawsuit is only required should a plan explicitly provide for disclosure and he was never instructed to tell his attorney or the Bankruptcy Court about the suit. R. Doc. 213 at 3-4.

The Court now considers the three elements of judicial estoppel.

Plaintiff Bias admits that he never disclosed this lawsuit as an asset in his bankruptcy proceeding. Bias filed for Chapter 13 bankruptcy on May 22, 2008. R. Doc. 213-1 at 1. Plaintiff Bias filed this lawsuit on September 5, 2012, during the pendency of the bankruptcy proceeding and never disclosed it to the trustee. R. Doc. 1. The Bankruptcy Court confirmed Bias' bankruptcy plan on July 23, 2008 and discharged his bankruptcy on July 18, 2013. R. Doc. 213-1 at 1. The Bankruptcy Court accepted Plaintiff's position that he had no potential legal claims, which was inaccurate. Following his discharge, Bias continued prosecuting this lawsuit.

Finally, Plaintiff's argument that he was ignorant of the law or that the law was confusing fails. It is abundantly clear that debtors must disclose all potential lawsuits as assets, even when

8

it is not certain that they will become part of the bankruptcy estate. Obviously, Bias had knowledge of his FCA claim during the pendency of his bankruptcy because he filed this lawsuit before he was discharged in bankruptcy. Further, Bias is not required to have had knowledge of the claim, merely the facts that lead to the claim. The alleged facts occurred in September 2009, shortly after Bias filed for bankruptcy. Motivation is generally self-evident and here, under the terms of his bankruptcy without disclosure of this lawsuit, Bias was not required to pay interest on his debt and had over $200,000 discharged. R. Doc. 213-1 at 10. "Therefore, [Bias'] arguments on the issue of inadvertence are uniformly rejected by binding precedent." *Allen v. C & H Distributors, LLC*, 2015 WL 1399683, at *4 (W.D. La. March 26, 2015).

For these reasons, Plaintiff Bias' claims are judicially estopped and this initial issue is dispositive. Therefore, the Court does not need to address the remaining issues.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings, R. Doc. 195, is **GRANTED** and Plaintiff Bias' claims are **DISMISSED** on grounds of judicial estoppel. This dismissal is **WITHOUT PREJUDICE FOR THIRTY (30) DAYS** to allow time for a Chapter 7 trustee to pursue their rights to the claims if Plaintiff Bias' bankruptcy case is reopened and converted to a Chapter 7 liquidation. *See Reed v. City of Arlington*, 650 F.3d 571, 579 (5th Cir.2011) ("Absent unusual circumstances, an innocent bankruptcy trustee may pursue for the benefit of creditors a judgment or cause of action that the debtor-having concealed that asset during bankruptcy-is himself estopped from pursuing."). After thirty (30) days, Plaintiff Bias' claims will be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff and Defendant's cross-motions for summary judgment, R. Docs. 197, 206, are **DISMISSED AS MOOT**.

9

New Orleans, Louisiana, this 13th day of September, 2017.

                                                                                                                                _____
                                                                                                                                UNITED STATES DISTRICT JUDGE